**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

DAVID PEDREIRA,
     Plaintiff,

     v.                                 Case No. 3:25-cv-1576 (OAW)

CALDERON, *et al*.,
     Defendants.

## <u>INITIAL REVIEW ORDER</u>

While detained at Hartford Correctional Center ("HCC"),[1] self-represented plaintiff David Pedreira filed a complaint under 42 U.S.C. § 1983 against six prison officials employed by Cheshire Correctional Center ("Cheshire"). In it, he brings claims for excessive force, failure to intervene, retaliation, and an illegal search of his prison cell, for which he seeks both damages and declaratory relief.

The Prison Litigation Reform Act requires federal courts to review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the court must dismiss the

---

[1] The Department of Correction ("DOC") and state Judicial Branch websites show that Plaintiff currently has been detained since August 4, 2026, and that he is held at the Corrigan-Radgowski Correctional Center for what appears to be an alleged protective order violation and other pending charges. *See* DOC, *Inmate Information*, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=287610 (last visited Aug. 11, 2026); Judicial Branch, *Pending Criminal / Motor Vehicle*, https://www.jud2.ct.gov/crdockets/parm1.aspx (last visited Aug. 11, 2026). Previously, on September 11, 2025, he appears to have been sentenced to 30 months in prison for Violation of a Standing Criminal Protective Order and for Assault of a Public Safety, Emergency Medical, Public Transit, or Health Care Personnel (in case number K10K-CR23-378256) and to 6 months in prison for Assault in the 3rd Degree (in K10K-CR24-170734-T). That same day, he also appears to have received a 30-month prison sentences for Violation of Probation (in K10K-CR22-375465 and K10K-CR22-375466). *See Criminal/Motor Vehicle Convictions*, https://www.jud2.ct.gov/crdockets/SearchByDefDisp.aspx (last visited Aug. 11, 2026). The court may take judicial notice of these websites. *See*, *e.g.*, *Taveras v. Semple*, No. 3:15-CV-00531 (SALM), 2023 WL 112848, at *1 n.1 (D. Conn. Jan. 5, 2023) (taking judicial notice of Connecticut DOC inmate locator).

complaint, or any portion thereof, which is frivolous or malicious, which fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune therefrom.  *See* 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b).

Accordingly, the court has thoroughly reviewed all factual allegations in the complaint and has conducted an initial review of the allegations therein under 28 U.S.C. § 1915A.  The court's conclusions are as follows.

## I.     <u>FACTUAL BACKGROUND</u>

While the court does not set forth all the facts alleged in Plaintiff's complaint, it summarizes his basic factual allegations here to give context to the ruling below.

Plaintiff was housed at Cheshire on June 7, 2025.  Compl., ECF No. 1 ¶ 1.  Plaintiff was out of his cell for a meal when he "missed [his] door."  *Id.* ¶ 2.  Instead of giving Plaintiff a disciplinary ticket for this, correctional officers Hammie and Calderon made Plaintiff sit alone at a table in the middle of the housing unit.  *Id.*  Plaintiff found this "degrading, unethical, [and] unprofessional" so he asked Hammie and Calderon to call a lieutenant.  *Id.*¶¶ 2–3.[2]  Hammie and Calderon refused to do so.  *Id.* ¶ 3.

Hammie emerged from the control room and told Plaintiff that he was "going to make [Plaintiff] work."  *Id.* ¶ 4.  Hammie went to Plaintiff's cell to search it "as a way of retaliation."  *Id.*  Hammie opened the cell door and asked Plaintiff's cellmate to identify Plaintiff's property in the cell.  *Id.* ¶ 5.  Hammie then asked Plaintiff's cellmate to step out

---

[2] The third paragraph is misnumbered as "4."

of the cell while Hammie searched it. *Id.* Hammie began throwing Plaintiff's property onto the cell floor and stepping on it. *Id.* ¶ 6. Plaintiff got up from the table, approached the control room, and asked Calderon to call a lieutenant. *Id.* ¶ 7. Calderon refused to do so, and Plaintiff went back to the table. *Id.*

As Plaintiff was returning to the table, Hammie emerged from Plaintiff's cell to return to the control room. *Id.* ¶ 8. Plaintiff came back to his cell and picked up the property that Hammie had strewn on the floor. *Id.* As Plaintiff was picking up his property, Hammie returned to Plaintiff's cell, called Plaintiff a "bitch," and told Plaintiff to exit the cell because Hammie was not done searching it. *Id.* ¶ 9. Plaintiff returned to a table in front of his cell. *Id.* ¶ 10. Hammie stood in front of Plaintiff making "intimidating" gestures and stating to Plaintiff, "What you going to do about it[,] bitch?" *Id.* Hammie told Plaintiff to come to his cell. *Id.* ¶ 11. Plaintiff stood outside the cell as Hammie entered the cell. *Id.*

Hammie told the Plaintiff to "put [Plaintiff's] foot over the line" into the cell's doorway. *Id.* ¶ 12. Plaintiff placed one foot over the threshold to the cell door. *Id.* Plaintiff did so, and Hammie punched Plaintiff in the face, out of view of the camera. *Id.* ¶ 13. While Plaintiff was still in shock from the punch, Calderon ran to Plaintiff's cell, put Plaintiff in a chokehold, and started choking Plaintiff until Plaintiff could not breathe. *Id.* ¶ 14. Hammie held Plaintiff's left hand so Plaintiff could not stop Calderon from choking Plaintiff. *Id.* ¶ 15. Prison staff then escorted Plaintiff to segregation. *Id.* ¶ 16.

While in segregation, Plaintiff saw a nurse for injuries to his neck and hand. *Id.* ¶ 17. The nurse gave Plaintiff Tylenol and put Plaintiff on a list to see a doctor. *Id.* Four days after the incident with Hammie and Calderon, Plaintiff saw a doctor, who x-rayed

3

Plaintiff and prescribed Tylenol and a topical gel for pain. *Id.* ¶ 18. Prison officials transferred Plaintiff to HCC after Plaintiff spent eleven days in segregation. *Id.* ¶ 19. Plaintiff still experiences neck pain and adverse mental health effects from the incident with Hammie and Calderon. *Id.* ¶ 30.

## II.   DISCUSSION

*Pro se* submissions "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (citation modified). Liberally construing Plaintiff's complaint, it most strongly suggests claims for excessive force, failure to intervene, retaliation, and an illegal search of Plaintiff's cell.[3] The court analyzes each in turn.

### A. Excessive Force

The complaint suggests an excessive force claim related to Hammie punching Plaintiff in the face and Calderon choking Plaintiff thereafter. Excessive force claims may arise under the Fourth, Eighth, or Fourteenth Amendments depending on the plaintiff's legal status at the time of the incident. *See Graham v. Conner*, 490 U.S. 386, 395 (1989) (stating that all excessive force claims against law enforcement officers relating to "an

---

[3] Plaintiff's allegations that he was placed in segregation for eleven days "for something [he] didn't do," Compl., ECF No. 1 ¶ 19, potentially suggests a procedural due process claim. *See McClary v. Coughlin*, 87 F. Supp. 2d 205, 214 (W.D.N.Y. 2000), *aff'd sub nom.*, *McClary v. Kelly*, 237 F.3d 185 (2d Cir. 2001) (due process "require[s] segregation decisions made by prison officials to be based on 'some evidence'" (quoting *Superintendent v. Hill,* 472 U.S. 445, 455 (1985)). But Plaintiff does not describe which prison official placed Plaintiff in segregation such that the court may discern the personal involvement of that prison official. *See* section II(E), *infra* (discussing "personal involvement" standard).

arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment"); *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (concluding that the Eighth Amendment "serves as the primary source of substantive protection to convicted prisoners . . . where the deliberate use of force is challenged as excessive and unjustified"); *Graham*, 490 U.S. at 395 n.10 (noting that "the Due Process Clause [of the Fourteenth Amendment] protects a pretrial detainee from the use of excessive force that amounts to punishment").

It appears Plaintiff was awaiting disposition of several charges when Hammie and Calderon used force on him on June 7, 2025.  *See* note 1, *supra*.  "This Circuit has not fully addressed whether a probationer awaiting disposition of his revocation proceeding is considered a prisoner or a pretrial detainee for purposes of the Eighth Amendment." *Reinoso-Delacruz v. Ruggerio*, No. 3:19-CV-149 (SRU), 2019 WL 2062434, at *2 (D. Conn. May 9, 2019).  But this court has concluded that excessive force claims brought by such persons are analyzed under the Fourteenth Amendment.  *See*, *e.g.*, *Randolph v. Marcucci*, No. 3:24-CV-243 (OAW), 2024 WL 1860060, at *2 (D. Conn. Apr. 29, 2024).

Under the Fourteenth Amendment, prison guards may use *some* force "to preserve internal order and discipline and to maintain institutional security."  *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)).  Thus, to state a claim for the use of excessive force, a pretrial detainee must "show only that the force purposely or knowingly used against him was objectively unreasonable."  *Id*. at 397–98.  A plaintiff may prevail by showing that actions taken against him "are not 'rationally related to a legitimate nonpunitive governmental purpose,'

5

or that the actions 'appear excessive in relation to that purpose.'" *Id.* at 398 (quoting *Bell*, 441 U.S. at 561).

Plaintiff alleges that Hammie punched Plaintiff in the face after Hammie ordered Plaintiff to place his foot in the cell doorway. *See* Compl., ECF No. 1 ¶¶ 12–13. Plaintiff also alleges that Calderon put Plaintiff in a chokehold while Plaintiff was still in shock from Hammie's punch. *Id.* ¶ 14. These unprovoked uses of force were seemingly unrelated to a "legitimate nonpunitive governmental purpose" or "excessive in relation to that purpose," *Kingsley*, 576 U.S. at 398, such that Plaintiff has sufficiently stated a Fourteenth Amendment excessive force claim against Hammie and Calderon for purposes of initial review. *See Barrett v. Marquez*, No. 3:25-CV-00022 (VAB), 2025 WL 1424921, at *4 (D. Conn. May 16, 2025) (correctional officer used excessive force when he punched inmate's cell window, causing glass to injure inmate's face); *Mendez v. Witherspoon*, No. 3:19-CV-02001 (JAM), 2020 WL 1914940, at *1, 3 (D. Conn. Apr. 20, 2020) (correctional officers "used excessive force against [inmate] by spraying him with mace, putting him in a chokehold, and brutally beating him for no good reason").

## B. Failure to Intervene

"Prison officials can also be held liable under section 1983 for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence." *Huertas v. Guadarrama*, No. 3:25-CV-118 (SRU), 2025 WL 1868045, at *5 (D. Conn. July 7, 2025) (citation modified). "To state a claim for a prison official's failure to intervene, a plaintiff must allege facts showing that: (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) the officer

6

knew that the victim's constitutional rights were being violated; and (3) the officer did not take reasonable steps to intervene.'" *Deegan v. Doe #1*, No. 3:19-CV-1356 (MPS), 2019 WL 5964816, at *3 (D. Conn. Nov. 13, 2019) (citation modified). "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)).

It is unclear from the allegations in the complaint whether Calderon had "a realistic opportunity to intervene and prevent the harm" caused by Hammie, *Deegan*, 2019 WL 5964816, at *3, because Calderon did not run to Plaintiff's cell until after Hammie had punched Plaintiff. *See* Compl., ECF No. 1 ¶ 14; *see also Jones v. City of Hartford*, 285 F. Supp. 2d 174, 182–83 (D. Conn. 2003) (granting summary judgment on failure to intervene claim where "no reasonable jury could infer that [Defendant officers], who were on the other side of the vehicle, could have intervened in sufficient time [to] stop the 'three to five kicks'" delivered by another officer).

But Hammie had the opportunity to intervene and prevent Calderon from choking Plaintiff once Calderon arrived at the cell. Instead of "tak[ing] reasonable steps to intervene," *Deegan*, 2019 WL 5964816, at *3, Hammie held Plaintiff's hand so Plaintiff could not stop Calderon from choking him. Compl., ECF No. 1 ¶ 15. Thus, Plaintiff has alleged sufficient facts to state a failure to intervene claim against Hammie for purposes of initial review. *See Rosa v. Cook*, No. 3:22-CV-703 (SALM), 2022 WL 17415061, at *7 (D. Conn. Dec. 5, 2022) (permitting failure to intervene claim to proceed against prison

officials who were present when correctional officers used excessive force on inmate but did nothing to intervene).

### C. <u>Retaliation</u>

Plaintiff alleges that Hammie searched Plaintiff's cell in retaliation for asking Hammie and Calderon to call a lieutenant after Hammie ordered Plaintiff to sit at a table in the middle of the housing unit.  Compl., ECF No. 1 ¶¶ 2–4.  This allegation suggests a First Amendment retaliation claim.

To prove a First Amendment retaliation claim under section 1983, a prisoner must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected [conduct] and the adverse action."  *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (citation modified) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quotation omitted)).

The speech in question is Plaintiff's requests to correctional officers to call a lieutenant amidst Plaintiff's displeasure with having to sit at a table in the middle of the housing unit and Hammie searching his cell.  Compl., ECF No. 1 ¶¶ 2–4, 7.  The court infers from context that Plaintiff sought to complain to a lieutenant about this.

"[I]t is well established that retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983."  *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (citation modified).  But while district courts "have found that verbal complaints may be protected for the purposes of a First Amendment retaliation

claim, the Second Circuit has yet to articulate a bright line rule regarding constitutionally protected oral speech by an inmate." *Cosby v. McDonald*, No. 3:20-CV-432 (MPS), 2020 WL 5026550, at *6 (D. Conn. Aug. 25, 2020).

"In considering an inmate's oral speech, the district courts have distinguished verbal complaints about the conduct of correctional officials or conditions of confinement and verbal arguments or confrontations between a prisoner and correctional staff." *Hinton v. Pearson*, No. 3:21-CV-863 (MPS), 2021 WL 4521994, at *4 (D. Conn. Oct. 4, 2021) (citing *Miller v. Lamont*, No. 3:20-CV-872 (MPS), 2020 WL 6136300, at *8 (D. Conn. Oct. 19, 2020) (noting that "courts have distinguished between oral grievances and oral confrontations or arguments between a prisoner and a correctional officer and have concluded that the latter do not constitute protected speech" (citing cases))).

Here, Plaintiff's request to speak to a lieutenant occurred during an ongoing dispute with Hammie and Calderon. *See* Compl., ECF No. 1 ¶¶ 2–4, 7. As in other similar cases where an inmate asked to speak to a lieutenant during a dispute with a correctional officer, "the speech at issue is more in the nature of a confrontation or argument." *See Hinton*, 2021 WL 4521994, at *4 (inmate requesting that correctional officer call lieutenant after correctional officer ordered inmate to enter his cell); *Mejia v. Kurtzenacker*, No. 3:21-CV-1222 (MPS), 2022 WL 19331, at *5 (D. Conn. Jan. 3, 2022) (inmate requesting that correctional officer call lieutenant after correctional officer refused to provide inmate with chair). As such, Plaintiff's request to speak to a lieutenant is not protected speech sufficient to support a retaliation claim. *See ibid.* Accordingly, this claim must be dismissed. 28 U.S.C. § 1915A(b)(1).

### D. Search of Prison Cell

Plaintiff alleges that Hammie searched Plaintiff's cell "as a way of retaliation," Compl., ECF No. 1 ¶ 4, which suggests that the search may have violated Plaintiff's right to be free from unreasonable searches and seizures under the Fourth Amendment. *See* U.S. Const. amend. IV (guaranteeing "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure"). A search under the Fourth Amendment "occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001); *see also, e.g.*, *Carpenter v. United States*, 585 U.S. 296, 304 (2018). Thus, to claim the Fourth Amendment's protections, a person must have "a legitimate expectation of privacy in the invaded place." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998).

The Supreme Court has held that "prisoners have no legitimate expectation of privacy and that the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells[.]" *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). The Second Circuit subsequently carved out a narrow exception to this rule in *United States v. Cohen*, in which it held that that prison officials violated a pretrial detainee's Fourth Amendment rights when the officials searched the pretrial detainee's cell at the request of prosecutors "solely to obtain information for a superseding indictment." 796 F.2d 20, 24 (2d Cir. 1986).

"The Second Circuit has twice rejected efforts by inmates to extend the limited Fourth Amendment right recognized in *Cohen*." *United States v. McBean*, No. 24-CR-541 (PAE), 2025 WL 1113086, at *8 (S.D.N.Y. Apr. 15, 2025) (discussing *Willis v. Artuz*, 301 F.3d 65 (2d Cir. 2002) and *United States v. Willoughby*, 860 F.2d 15 (2d Cir. 1988)).

10

Thus, a search of an inmate's cell constitutes a violation of the Fourth Amendment only "where (1) a pretrial detainee's cell was searched (2) at the instigation of the prosecution (3) solely to gather information in connection with a pending case and unsupported by institutional prison interests." *McBean*, 2025 WL 1113086, at *9.

Here, correctional officers searched a pretrial detainee's cell, but that search was at the instigation of a correctional officer, not a prosecutor, and the purpose of the search (if there was any), was "as a way of retaliation," Compl., ECF No. 1 ¶ 4, not to gather evidence for a pending case. *Cf. McBean*, 2025 WL 1113086, at *9. Such retaliatory, harassing, or arbitrary searches do not violate the Fourth Amendment. *See Gadson v. Goord*, 96-CV-7544, 1997 WL 714878 (SS), *7 (S.D.N.Y. Nov.17, 1997) ("[S]earches of cells implicate no constitutional rights, even if the search is arbitrary or retaliatory in nature."); *West v. City of New York*, No. 13-CV-5155 (PAE), 2014 WL 4290813, at *6 (S.D.N.Y. Aug. 28, 2014) (noting that "even searches conducted 'solely for harassment' do not implicate the Fourth Amendment"). Accordingly, to the extent Plaintiff's complaint suggests a Fourth Amendment claim, this claim must be dismissed. 28 U.S.C. § 1915A(b)(1).

### E. <u>Relief Requested</u>

To the extent Plaintiff seeks damages against individual defendants in their official capacities, he may not do so, because they are all state employees. *Quinones v. Quiros*, No. 3:24-CV-1805 (OAW), 2025 WL 1445860, at *2 (D. Conn. May 20, 2025) ("DOC employees may not be sued in their official capacity for money damages in federal court."). Plaintiff may seek damages from Defendants in their individual capacities, but

only if he can show their personal involvement in a constitutional violation.  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"). "Personal involvement may be shown by 'direct participation,' which requires in this context 'intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal.'"  *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Provost v. City of Newburgh,* 262 F.3d 146, 155 (2d Cir. 2001)).  This is true with respect to supervisory officials, as well.  *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (stating that a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

The only defendants personally involved in a constitutional violation were Hammie and Calderon.  Defendants Reis, Columbo, and Eliades are not mentioned in the complaint, so they cannot be considered personally involved.  *Barnes v. Pozzi*, No. 10-CV-2554, 2012 WL 3155073 (JGK), at *8 (S.D.N.Y. Aug. 3, 2012) (dismissing two defendants who were not mentioned in the complaint for lack of personal involvement). Defendant Soley is mentioned in the complaint, but Soley's involvement was limited to denying Plaintiff's Level 1 and Level 2 grievances concerning Hammie and Calderon. *See* Compl., ECF No. 1 ¶¶ 23–24.  Because "district courts have held that review of a grievance, administrative, or disciplinary appeal is insufficient to establish the reviewer's personal involvement in claims relating to the underlying proceeding," *Muniz v. Cook*, No. 3:20-CV-1533 (MPS), 2021 WL 5919818, at *6 (D. Conn. Dec. 15, 2021) (collecting

12

cases), the court cannot consider Soley to have been personally involved in violating Plaintiff's rights. Accordingly, Plaintiff may pursue damages against only Hammie and Calderon in their individual capacities. The remaining defendants are terminated.

Plaintiff also seeks a declaratory judgment stating that prison officials violated his constitutional rights. *See* Compl., ECF No. 1 at 15. But "if Plaintiff were to prevail on any constitutional claim proceeding in this action, a judgment in his favor would serve the same purpose as a declaration that Defendants violated his constitutional rights." *Petion v. Pearson*, No. 3:22-CV-1647 (OAW), 2023 WL 6050054, at *4 (D. Conn. Sept. 15, 2023). Accordingly, any claim for declaratory relief must be dismissed.

Thus, Plaintiff may pursue claims for damages against Hammie and Calderon in their individual capacities.

### III.    Motion to Appoint Counsel

Plaintiff has also filed a motion to appoint counsel. ECF No. 4. The Second Circuit has cautioned district courts against the "routine appointment of counsel." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 173–74 (2d Cir. 1989). Thus, in considering whether to appoint pro bono counsel for an indigent litigant, the court must "first determine whether the indigent's position seems likely to be of substance." *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986); *see also Cooper*, 877 F.2d at 171 ("[C]ounsel is often unwarranted where the [litigant's] chances of success are extremely slim."). If the claims are sufficiently meritorious, the court should then consider other factors bearing on the need for appointment of counsel, including the movant's ability to investigate the factual

issues of the case, whether conflicting evidence implicating the need for cross-examination will be the major proof presented, the movant's apparent ability to present the case, and the complexity of the legal issues involved.  *See Hodge*, 802 F.2d at 61–62.  At this early state of litigation, it is not clear that Plaintiff's claims are of sufficient merit to warrant an appointment of counsel.  Thus, the court must **DENY** Plaintiff's motion, ECF No. 4, but **without prejudice** to filing another such motion at a later time.

## IV.   <u>ORDERS</u>

For the reasons stated above, it hereby is ordered as follows:

(1) This action may proceed on Plaintiff's Fourteenth Amendment claims for excessive force and failure to intervene against Defendant Hammie in his individual capacity and Plaintiff's Fourteenth Amendment claim for excessive force against Defendant Calderon in his individual capacity.

(2) All other claims are dismissed, and all other defendants are terminated.

(3) Plaintiff may amend the complaint on or before **October 12, 2026.  An amended complaint, if filed, will completely replace the complaint, and the court will not consider any allegations made in the original complaint in evaluating any amended complaint.**  The court will review any amended complaint to determine whether it may proceed to service of process.

(4) If Plaintiff wishes to proceed only on the claims noted above, he may file a notice on the docket saying so, at which point the case immediately will proceed

14

to service. If nothing is filed on the docket by **October 12, 2026,** the court will presume Plaintiff wishes to proceed only on these claims.

(5) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the court.  Failure to do so can result in dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  He should also notify Defendant or defense counsel of his new address.

(6) Plaintiff shall utilize the Prisoner Electronic Filing Program when filing documents with the court.  Plaintiff is advised that the Program may be used only to file documents with the court.    Under local court rules, discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendant's counsel by regular mail.

**IT IS SO ORDERED** at Hartford, Connecticut, this 11th day of August, 2026.


_____/s/_____
Omar A. Williams
United States District Judge

15